PEOPLE v ANDERSON

Docket No. 300641. Submitted May 10, 2011, at Grand Rapids. Decided
June 7, 2011, at 9:05 a.m. Vacated and remanded for reconsideration,
492 Mich 851.

Ted A. Anderson, an unregistered medical-marijuana user, was
charged in the 8th District Court with manufacturing marijuana
after the police discovered 15 small marijuana plants in a closet of
defendant's home and an additional 11 small plants growing in a
garden behind his garage. Defendant moved in the Kalamazoo
Circuit Court for dismissal of the charge, citing the affirmative
defense provided by § 8 of the Michigan Medical Marihuana Act
(MMA), MCL 333.26428. The court, J. Richardson Johnson, J.,
denied the motion, concluding that defendant had failed to estab-
lish that the amount of marijuana in his possession was reasonably
necessary to ensure the uninterrupted availability of the mari-
juana he needed to treat his chronic back pain, MCL
333.26428(b)(2). The court further held that because defendant
had elected to pursue dismissal by motion and had failed to
establish the affirmative defense provided by § 8, he was barred
from presenting that defense again at trial. Defendant appealed by
delayed leave granted.

The Court of Appeals *held*:

1. Contrary to defendant's assertion, the trial court did not
require him to produce an expert witness to testify regarding the
amount of marijuana reasonably necessary to ensure the uninter-
rupted availability of the marijuana he needed to treat his chronic
back pain. Accordingly, defendant's argument that the trial court
erred by requiring him to produce such testimony failed.

2. The failure to establish the elements of the affirmative
defense provided by § 8 of the MMA at a pretrial hearing on a
motion to dismiss does not necessarily preclude a defendant from
reasserting that defense at trial. However, the court may bar the
assertion of the defense if the evidence is undisputed and no
reasonable jury could find that the defendant established the
elements of the affirmative defense. In this case, defendant did not
dispute that he had more than the 12 plants permitted under the
MMA and that the plants were not kept in an enclosed, locked
facility as required by § 4 of the MMA, MCL 333.26424(a). In light

of those facts, no reasonable jury could conclude that defendant met the elements of the affirmative defense, and the trial court did not err by barring defendant from asserting the defense at trial.

Affirmed.

M. J. KELLY, J., concurred, agreeing that the trial court did not err when it prohibited defendant from asserting the affirmative defense provided by § 8 of the MMA at trial in light of the fact that defendant could not establish the elements of that defense as a matter of law, but further asserted that it was necessary to address defendant's argument that the trial court erred by requiring him to present expert testimony in order to establish the reasonableness of the amount of marijuana that he possessed. He concluded that even if the trial court erred by requiring defendant to present such expert testimony, the court reached the correct result by denying defendant's motion to dismiss because defendant had failed to comply with the MMA's limitations on the number of marijuana plants a patient may keep and the requirement that those plants be kept in an enclosed, locked facility.

CONTROLLED SUBSTANCES — MEDICAL MARIJUANA — CRIMINAL DEFENSES — MOTIONS TO DISMISS.

The failure to establish the elements of the medical-purpose defense to a marijuana-related charge under the Michigan Medical Marihuana Act at a pretrial hearing on a motion to dismiss does not necessarily preclude a defendant from reasserting that defense at trial; however, the court may bar the assertion of the defense at trial if the evidence is undisputed and no reasonable jury could find that the defendant established the elements of the affirmative defense (MCL 333.26428).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Jeffrey R. Fink*, Prosecuting Attorney, and *Cheri L. Bruinsma*, Assistant Prosecuting Attorney, for the people.

*John Targowski* for defendant.

Before: HOEKSTRA, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM. In his delayed application for leave to appeal, defendant raises two alleged errors on the part

of the trial court relative to the denial of his motion to dismiss. First, he argues that the trial court erred in *requiring* him to produce expert testimony in support of his defense to the charges, and second, that he should not have been precluded from raising his statutory defense at trial even though the trial court rejected the defense as factually unsupported after a pretrial evidentiary hearing. As set forth below, we agree with, and therefore adopt as a unanimous opinion of this Court, parts I, II(A), and II(C)(3) of Judge M. J. KELLY's concurring opinion. That is, we agree with Judge KELLY's analysis and conclusion concerning defendant's second argument, i.e., that under these facts the trial court correctly forbade defendant from raising his defense at trial, but we provide an alternative explanation for why defendant cannot prevail on his first argument. Consequently, for the reasons stated below and in parts I, II(A), and II(C)(3) of Judge KELLY's opinion, we affirm.

As we noted, defendant's first argument is that the trial court erred in requiring him to produce expert testimony to establish his defense under MCL 333.26428.[1] This argument cannot be sustained, however, because the factual underpinning is incorrect. As the prosecution notes in its brief on appeal, the trial court did not *require* defendant to produce an expert in order to prevail on his defense. Instead, as the trial court's opinion makes clear, the trial court indicated that an expert would have been able to provide *relevant* testimony. In denying defendant's motion, the court considered both defendant's testimony and the testi-

---

[1] Although our concurring colleague would decide this issue on an alternative ground, we opt for deciding the issue raised by defendant and briefed by the parties. *Bradley v Saranac Community Sch Bd of Ed*, 455 Mich 285, 302-303; 565 NW2d 650 (1997); *Paramount Pictures Corp v Miskinis*, 418 Mich 708, 730-731; 344 NW2d 788 (1984).

mony of his family physician, but rejected both as either not being credible (defendant) or not being qualified to testify on the subject (defendant's physician). In the end, however, the court held that in the absence of relevant expert testimony and any other credible testimony supporting the defense, defendant could not establish a defense:

> The record is devoid of any explanation why growing marihuana outdoors in the open and having marihuana in amounts well in excess of the presumptive limit was reasonably necessary to treat Defendant's back pain. The court holds that expert testimony is relevant on this issue. This is not something a lay person would know. MRE 702. The Defendant's opinion on what he had for self-treatment is not creditable. The court finds on the proofs presented that his family doctor was not qualified to offer an opinion on this question, because there is no evidence she has experience working with patients for whom she has recommended marihuana, including experience with dosage. Her opinion is unpersuasive. There is no other evidence on this issue except the presumption within the [Michigan Medical Marihuana] Act. See MRE 301. Because the court has concluded the amount of marihuana exceeds the amount reasonably necessary, it need not resolve whether in fact the Defendant otherwise has met the requirement for a section 8 defense, or to what extent expert testimony is relevant to the other two requirements of section 8 [MCL 333.26428].

We see nothing in this opinion where the trial court ruled as a matter of law that defendant's motion was being denied because of the absence of an expert who was qualified to testify about the amount of marijuana reasonably necessary for defendant's medical condition. Rather, the trial court analyzed the other evidence presented by defendant, i.e., his testimony and that of his physician, and after rejecting that evidence as well as recognizing a lack of expert testimony, denied defen-

dant's motion. Hence, defendant's assertion that the trial court required him to produce an expert was incorrect, and as that was the basis for his argument, he cannot prevail.[2]

Affirmed.

HOEKSTRA, P.J., and MURRAY, J., concurred.

M. J. KELLY, J. (*concurring*). In this interlocutory appeal, defendant, Ted Allen Anderson, appeals by leave granted the trial court's opinion and order denying his motion to dismiss the prosecution's charge that he unlawfully manufactured marijuana, see MCL 333.7401(1) and (2)(d), and barring him from arguing or presenting evidence that he had a valid defense to that charge under the Michigan Medical Marihuana Act (the MMA),[1] MCL 333.26421 *et seq.* On appeal, this Court must determine whether the trial court erred to the extent that it required Anderson to prove his defense under MCL 333.26428 with expert testimony and whether it erred when it barred Anderson from presenting that defense at his upcoming trial. I conclude that Anderson could not—as a matter of law—establish the elements of the defense provided under MCL 333.26428. As such, the trial court did not err when it denied Anderson's motion and did not err when it prohibited Anderson from presenting that defense at his trial. For this reason, I would affirm the trial court's order.

---

[2] In essence, defendant has presented a hypothetical issue, as the trial court never held that an expert was required. We generally refrain from deciding hypothetical issues. *People v Turner*, 123 Mich App 600, 604; 332 NW2d 626 (1983).

[1] Although the statutory provisions at issue refer to "marihuana," by convention this Court uses the more common spelling—"marijuana"—in its opinions.

I. BASIC FACTS AND PROCEDURAL HISTORY

Anderson testified that he had a degenerative back condition and that, in 1997, he further injured his back while working as a baker. He sought treatment through his family physician, Shannon McKeeby, M.D.

Anderson said that his back pain made it difficult to get up and down stairs and bend over and pick things up. He could not even pick up his grandchildren. He exacerbated his condition with a slip and fall at work in 2007. The fall worsened his condition to the point that he had to quit his job. He testified that, after the fall, he pretty much stopped gardening and it was even hard to get in and out of the shower. He said he was in "a lot more pain . . . ." Although he used methadone for the pain, nothing helped with his sciatica. When his sciatic nerve got impinged on it sent a shooting pain down his leg "all the way to my foot" and "it feels like . . . I'm standing on a hot poker."

McKeeby testified that she had been treating Anderson at her family practice for at least 10 years. In addition to her general practice, she treated Anderson for chronic back pain. She stated that an MRI revealed that Anderson had a bulging disc in his back and that the disc was impinging on his nerves. She treated Anderson using different "modalities," but he was still in "significant pain," even with the medications that she was using to "try and control his pain . . . ." She said that Anderson used methadone and Vicodin to control his back pain and that he had used MS Contin and Percocet in the past.

McKeeby said that, on June 4, 2009, Anderson came to an appointment for "general issues." He discussed the new medical marijuana law and said it "was something that he would like to look into." McKeeby stated that Anderson had not, before that appointment, ever said that

he used marijuana. He asked her whether he might be a "good candidate" for using marijuana medically to treat his pain. After explaining the "risk and possible benefits," McKeeby expressed her opinion that he might be a good candidate. McKeeby agreed that she unequivocally expressed her opinion to Anderson at the June 2009 appointment that marijuana "was a therapeutic modality" for his pain. Because she was prevented from authorizing his medical use of marijuana under hospital policy, she referred Anderson to a pain clinic for evaluation of possible medical use of marijuana. However, after she discovered that the pain clinic did not offer that kind of service, she left Anderson to his own devices in pursuing that type of treatment. McKeeby agreed that it would be reasonable for Anderson to maintain a three-month supply of marijuana for his treatment.

Anderson testified that marijuana relaxes him and gives him relief from his chronic pain: "I could play catch. I could bend down a lot easier and pick things up." He also could stand longer without sciatica.

Georgeann Ergang testified that she worked for the Kalamazoo Township Police Department and that she was assigned to the Southwest Enforcement Team, which is a narcotics unit.[2] Ergang said that she went to Anderson's residence on June 9, 2009. An officer had earlier gone to Anderson's home to investigate a possible break-in that Anderson's estranged wife had reported. Ergang said that the other officer called her after he discovered what appeared to be marijuana plants.

Ergang searched Anderson's home with his estranged wife's permission and discovered 15 marijuana plants under a grow light in a closet in an upstairs

---

[2] Ergang testified at Anderson's preliminary examination and at the hearing on his motion to dismiss.

bedroom. She described the plants as starter plants or seedlings that ranged from three to six inches in height. Ergang testified that pictures of the growing operation in the bedroom seemed to show that the light was on. She also said that she did not turn on the light. She found a small plastic bag of marijuana and a bag with clippings of leaves and stems from marijuana plants. Ergang found an additional 11 marijuana plants growing in a garden behind Anderson's garage.

Anderson's wife testified that she went to his house to feed and water his animals while he was out of town. When she arrived, she discovered that the house had been burglarized and called the police. She did not know that Anderson had marijuana in the house or outside.

Ergang interviewed Anderson on June 15, 2009. She said that she asked him about the marijuana and he admitted that the plants were his. He explained that he used marijuana for his medical condition. He also said that he had "been smoking marijuana for a long time and that he decided that he would grow his own . . . ."

Anderson testified that he voluntarily spoke with Ergang and explained to her that he used marijuana to treat his back pain. He said he had some marijuana buds for smoking. He stated that he had tried to get some marijuana clones to grow in his closet, but he abandoned those plants and left them to die by turning off the grow light. He noticed that when he returned from his trip, the grow light was on again. He did have eight or nine plants growing outside. The outdoor plants were about three to four inches in height, and he did not expect to be able to harvest them until they were "three and four feet tall," which would not be until late fall. Anderson said that the medical benefits are from the female plant and the buds produce the most active

ingredients, with the leaves providing little active medical benefit. He expected only half of his plants to be female after maturation.

Anderson admitted that he had about 9 grams of marijuana that could be smoked. He explained that he needs to smoke about four pipes a day with about a quarter of a gram in each pipe. Therefore, he continued, 9 grams is about a one-week supply. He also admitted that he had about 110 grams of leaf cuttings. He said that he cannot smoke the leaves, but he does eat them by grinding them up and adding them to his Rice Krispies Treats. He said he eats three to four treats a day therapeutically.

The prosecutor ultimately charged defendant with manufacturing marijuana in violation of MCL 333.7401(1) and (2)(d)(*iii*). After a March 2010 preliminary examination, the district court bound Anderson over for trial.

In April 2010, Anderson moved under MCL 333.26428 to dismiss the charge of manufacturing marijuana. The trial court held a hearing on Anderson's motion over two days in late May and early June 2010. At the close of proofs, Anderson's trial counsel argued that the evidence showed that Anderson had a qualifying disability and had gotten a statement from his physician that she believed the medical use of marijuana might be useful for the treatment of his pain. He also argued that the evidence showed that Anderson possessed less than a three-month supply of useable marijuana in the form of buds and leaf cuttings and that the outdoor plants would not be ready for approximately three months. Because McKeeby had testified that it was reasonable for him to maintain a three-month supply, Anderson's counsel argued that the evidence clearly demonstrated that Anderson had es-

tablished that he had a reasonable amount of marijuana as required under MCL 333.26428. For that reason, he argued, Anderson was entitled to have the charges against him dismissed.

In August 2010, the trial court issued its opinion and order denying Anderson's motion to dismiss because he had failed to establish the elements of the defense under MCL 333.26428. In its opinion, the trial court stated that Anderson "elected his remedy" by filing his motion to dismiss. Because he failed to show at the hearing that he needed an amount of marijuana in excess of the presumptively reasonable amounts described under MCL 333.26424 and, with regard to the outdoor plants, failed to show that the plants were in an enclosed locked facility, he would not be permitted to present that defense under MCL 333.26428. In finding that Anderson had failed to establish the reasonableness of the amount of marijuana that he had, the trial court concluded that Anderson had to present expert testimony as to the amount of marijuana that was reasonably necessary to maintain an uninterrupted supply for his treatment.

After the trial court denied his motion for reconsideration, Anderson applied for leave to appeal the trial court's order and asked this Court to stay the lower court proceedings. On October 21, 2010, this Court granted leave to appeal and stayed the lower court proceedings.[3]

## II. AFFIRMATIVE DEFENSES UNDER THE MMA

### A. STANDARDS OF REVIEW

On appeal, Anderson argues that the trial court erred when it determined that he had to establish through an

_____

[3] *People v Anderson*, unpublished order of the Court of Appeals, entered October 21, 2010 (Docket No. 300641).

expert that the amount of marijuana he had was reasonably necessary to treat his condition. He also argues that the trial court erred when it determined that, because he failed to establish his right to have the charges dismissed under MCL 333.26428 at the hearing on his motion to dismiss, he was also precluded from presenting a defense under that statutory provision at trial. This Court reviews de novo whether the trial court properly interpreted and applied the MMA to the facts of this case. See *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006). This Court similarly reviews de novo additional questions of law, such as whether a trial court properly determined that a defendant cannot present a particular affirmative defense on the ground that the defendant failed to establish a factual basis for asserting the defense. See *People v Petty*, 469 Mich 108, 113; 665 NW2d 443 (2003).

### B. SUMMARY OF THE MMA

As this Court has already noted, the MMA does not legalize the possession, manufacture, distribution, or use of marijuana. *People v King*, 291 Mich App 503, 507-509; 804 NW2d 911 (2011); see also *People v Redden*, 290 Mich App 65, 92-93; 799 NW2d 184 (2010) (opinion by O'CONNELL, P.J.) (noting that the MMA did not repeal "any drug laws" contained in the Public Health Code and that, as such, persons using marijuana are still "violating the Public Health Code"); MCL 333.26422(c) (recognizing that federal law still prohibits the use of marijuana). Instead, it prescribes a very limited set of circumstances under which certain persons involved in the use of marijuana for the treatment of serious or debilitating medical conditions may avoid prosecution under state law. See MCL 333.26422(b) (providing that the practical effect of the law is to

protect "from arrest the vast majority of seriously ill people who have a medical need to use marihuana"). Stated another way, although admitting that he or she has committed a criminal offense involving marijuana, a defendant may nevertheless establish the elements of the defense provided under the MMA and avoid criminal liability. See *People v Dupree*, 284 Mich App 89, 99-100; 771 NW2d 470 (2009) (opinion by M. J. KELLY, J.) (noting that an affirmative defense is one by which the defendant admits the commission of a crime, but seeks to justify, mitigate, or excuse the crime).

Section 7 of the MMA provides that the "medical use" of marijuana, generally, "is allowed" in Michigan, but only "to the extent that it is carried out in accordance with the provisions of this act." MCL 333.26427(a). The "medical use" of marijuana is very broadly defined to include "the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana" as long as those activities are "to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition." MCL 333.26423(e). Section 7 establishes that the MMA applies to almost every conceivable activity that might be undertaken in furtherance of the cultivation, processing, distribution, and use of marijuana as long as the activities are for medical use. Nevertheless, by defining "medical use" to include activities that are "to treat or alleviate a *registered* qualifying patient's" medical condition or symptoms, the definitional section appears to limit the application of the defenses to activities taken by or for *registered* patients.[4] MCL

---

[4] The statutory provisions dealing with the registration of patients and the administrative rules governing the registration of patients are found at MCL 333.26425 and MCL 333.26426.

333.26423(e) (emphasis added). In addition, § 7 provides that certain actions involving marijuana are not permitted under the act even though those uses might otherwise qualify as a medical use of marijuana. For example, a person may not undertake "any task under the influence of marihuana, when doing so would constitute negligence or professional malpractice." MCL 333.26427(b)(1). A person is also not permitted to possess or engage in the medical use of marijuana in a school bus; on the grounds of a preschool, primary, or secondary school; or in a correctional facility or to smoke marijuana on public transportation or in any public place. See MCL 333.26427(b)(2) and (3). Accordingly, § 7 establishes the base-line availability of the MMA's immunities and defenses: the activity must be for a "medical use," must be carried out "in accordance with the provisions of this act," and must not fall into one of the excepted categories set forth in MCL 333.26427(b).

The MMA provides immunity under § 4, MCL 333.26424, and an affirmative defense under § 8, MCL 333.26428. Section 4 provides the criteria for when a "qualifying patient" shall not be subject to penalties for the medical use of marijuana:

> A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility. Any incidental amount of

seeds, stalks, and unusable roots shall also be allowed
under state law and shall not be included in this amount.
[MCL 333.26424(a).]

In order to qualify for this immunity, a person must be
a "qualifying patient," must have been issued and
possess a "registry identification card," and must not
have more than "2.5 ounces of useable" marijuana or
more than 12 marijuana plants.

Section 4 provides similar immunity to a "primary
caregiver" who has been issued and possesses a registry
identification card for his or her acts taken to assist a
"qualifying patient to whom he or she is connected
through the [Department of Community Health's] reg-
istration process with the medical use of marihuana in
accordance with this act . . . ." MCL 333.26424(b). A
primary caregiver is, likewise, limited to 2.5 ounces of
useable marijuana for each qualifying patient and to no
more than 12 marijuana plants per qualifying patient,
which plants must be kept in an enclosed, locked
facility. MCL 333.26424(b)(1) and (2). Section 4 also
provides that certain other persons shall not be subject
to "arrest, prosecution, or penalty" for actions taken
with regard to the medical use of marijuana. See MCL
333.26424(f) (stating the conditions under which a
physician shall not be subject to penalties); MCL
333.26424(g) (stating under what conditions a person
who supplies marijuana paraphernalia shall not be
subject to penalties). Further, there is a statutory
presumption that a qualifying patient or primary car-
egiver "is engaged in the medical use of marihuana in
accordance with this act" if the qualifying patient or
caregiver is in possession of a registration card and in
possession of an amount of marijuana that "does not
exceed the amount allowed under this act." MCL
333.26424(d). It is noteworthy that § 4 does not provide

a mechanism for a person to challenge his or her arrest, prosecution, or subjection to a penalty in contravention of the prohibitions set forth in § 4; rather, the only provision for asserting an actual defense is found under § 8 of the MMA.

Under § 8, a "patient" or a "patient's primary caregiver" "may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana . . . ." MCL 333.26428(a). However, the use of the medical-purpose defense is limited to those situations in which the patient or caregiver shows all the following:

> (1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;
>
> (2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating condition; and
>
> (3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [MCL 333.26428(a).]

Moreover, a person "may assert the medical purpose for using marihuana in a motion to dismiss, and the charges shall be dismissed following an evidentiary hearing where the person shows the elements listed in [MCL 333.26428(a)]." MCL 333.26428(b).

### C. ASSERTING A MEDICAL PURPOSE DEFENSE UNDER § 8

In this case, Anderson moved under § 8(b) for dismissal of the charge that he unlawfully manufactured marijuana. After a hearing on the merits, the trial court determined that Anderson had failed to establish the elements stated under § 8(a); namely, that he failed to establish that the amount he had in his possession was "reasonably necessary to ensure the uninterrupted availability" of the marijuana he needed to treat his medical condition or symptoms. The trial court also found that he had failed to meet the elements because the evidence showed that he did not keep the plants in an enclosed, locked facility, as required under § 4. For these reasons, the trial court denied Anderson's motion for dismissal of the charge against him. In addition, the trial court determined that, because Anderson had elected to pursue dismissal by motion and failed to establish his § 8 defense, he was barred from presenting that defense again at trial. On appeal, Anderson challenges whether he needed an expert witness to establish what constituted a reasonable amount of marijuana and challenges the propriety of the trial court's ruling that he was categorically barred from presenting his defense because his motion was unsuccessful.

### 1. THE ELEMENTS OF A § 8 DEFENSE

Before turning to whether the trial court properly determined that Anderson had to present expert testimony to establish whether he had an amount of mari-

juana that "was reasonably necessary to ensure the uninterrupted availability" of marijuana for his treatment, MCL 333.26428(a)(2), it is necessary to first determine the exact parameters of the elements that Anderson had to "show" in order to properly assert a § 8 defense. If Anderson could not establish the elements of the defense stated under § 8 without regard to the reasonableness of the amount of marijuana and marijuana plants that he possessed, then this Court will have no need to determine whether his assertion of this defense also failed because he had to present expert testimony to establish the reasonableness of the amount of marijuana and marijuana plants that he possessed under § 8(a)(2).

As already explained, § 7 provides the baseline criteria for the assertion of immunity or a defense under the MMA. In order to assert immunity or a defense, a person must generally show that the otherwise prohibited activity was for a "medical use," was carried out "in accordance with the provisions of [the MMA]," and did not fall into one of the excepted categories stated under MCL 333.26427(b). Because a "medical use" is defined as an action taken or related to the treatment or alleviation of "a *registered* qualifying patient's" medical condition or associated symptoms, MCL 333.26423(e) (emphasis added), it would appear that Anderson could not assert a § 8 defense, as a matter of law, because he was not a registered qualifying patient or caregiver at the time he manufactured the marijuana at issue. However, notwithstanding the limitations set forth in § 7, the provisions for the defense set forth in § 8 appear to apply broadly to conduct that is not for a "medical use."

Section 8 clearly refers to a "patient" rather than a "qualifying patient" and states that the "patient" may assert the "medical purpose" for using the marijuana as a

defense rather than "medical use." MCL 333.26428(a). Hence, § 8 appears to provide a catchall defense for the use of marijuana for a medical purpose—even for persons who are not registered. And, indeed, this Court has specifically held that a defendant asserting a § 8 defense need not be registered in order to assert the defense. *Redden*, 290 Mich App at 81-82.[5]

The defendants in *Redden* were charged with manufacturing marijuana after they were discovered with 1½ ounces of marijuana and 21 marijuana plants. *Id.* at 68. At their preliminary examination, the defendants asserted a § 8 defense and asked the district court to dismiss the charges against them. *Id.* at 69. The district court agreed that § 8 applied to the facts of their cases, even though the defendants did not have valid registration cards at the time of their arrest, and dismissed the charges against them. *Id.* at 73-75. The district court reasoned that the amount of marijuana found in the defendants' possession was presumptively reasonable because it was less than the amount specified under § 4. *Id.* at 74. The circuit court disagreed with the district court's decision to dismiss and reinstated the charges because, it concluded, the record was insufficiently developed regarding whether the defendants had established the § 8 defense. *Id.* at 75-76.

On appeal, this Court first addressed the prosecution's argument that the registration requirement stated under § 4 applied to a defense asserted under § 8 because § 8(a) incorporated § 7, which in turn required compliance with the other provisions of the act. The Court in *Redden* rejected the contention that the limi-

---

[5] Although the Court in *Redden* stated that a registered patient could assert a defense under § 4, there is no actual defense provided under § 4. See *Redden*, 290 Mich App at 82. Indeed, there are no provisions within the MMA to assert the immunity provided under § 4.

tations stated under § 4 generally applied to the assertion of a defense under § 8:

> However, as defendants argue, this position ignores that the [MMA] provides two ways in which to show legal use of marijuana for medical purposes in accordance with the act. Individuals may either register and obtain a registry identification card under § 4 or remain unregistered and, if facing criminal prosecution, be forced to assert the affirmative defense in § 8.
>
> The plain language of the [MMA] supports this view. Section 4 refers to a "qualifying patient who has been issued and possesses a registry identification card" and protects a qualifying patient from "arrest, prosecution, or penalty in any manner . . . ." MCL 333.26424(a). On the other hand, § 8(a) refers only to a "patient," not a qualifying patient, and only permits a patient to "assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana . . . ." MCL 333.26428(a). Thus, adherence to § 4 provides protection that differs from that of § 8. Because of the differing levels of protection in §§ 4 and 8, the plain language of the statute establishes that § 8 is applicable for a patient who does not satisfy § 4. [*Id.* at 81.]

The Court also found it significant that the ballot proposal "explicitly informed voters that the law would permit registered *and* unregistered patients to assert medical reasons for using marijuana as a defense to any prosecution involving marijuana." *Id.* at 82. For this reason, the Court in *Redden* concluded that the "district court did not err by permitting defendants to raise the affirmative defense even though neither satisfied the registry-identification-card requirement of § 4." *Id.*

After concluding that the defendants did not have to be registered in order to assert a defense under § 8, the Court in *Redden* turned to the propriety of the circuit court's decision to reinstate the charges against the defendants. The Court first noted that the existence of

an affirmative defense is typically to be considered by a jury at trial. *Id.* at 84, citing *People v Waltonen*, 272 Mich App 678, 690 n 5; 728 NW2d 881 (2006). However, the Court acknowledged that when a defense is complete and there are no conflicting facts on the defense, it could be argued that there "would be no probable cause to believe a crime had been committed." *Redden*, 290 Mich App at 84. Nevertheless, because there were issues of fact that had to be resolved by a jury, the Court concluded that the circuit court did not err by reinstating the charges and binding the defendants over for trial. *Id.*

Accordingly, under *Redden*, a person may assert a § 8 defense even if he or she does not have a valid registration card, as required under § 4. But it must be noted that, in reaching this conclusion, the Court in *Redden* did not directly address whether any of the other limitations stated under § 4 apply to the assertion of a defense under § 8. Indeed, the Court in *Redden* reached its conclusion on the basis of the reference to "patient"—as opposed to "qualifying patient"—in § 8 and the fact that the ballot language indicated that the MMA provided a defense to unregistered patients. As such, the holding in *Redden* did not preclude application of the remaining limitations stated in § 4 to the assertion of a defense under § 8.

Under § 8(a), a person may "assert" a "medical purpose" defense to any prosecution involving marijuana, "[e]xcept as provided in section 7 . . . ." Although § 7(b) does provide a list of situations in which the immunity and defense provided under the MMA will not apply, § 7(a) also clearly states that the use of marijuana is "allowed" only "to the extent that it is carried out in accordance with the provisions of this act." MCL 333.26427(a). That is, a person asserting a

defense under § 8 must demonstrate that he or she has complied with the entire MMA.

In § 4, the MMA provides limitations on the amount of marijuana that a "qualifying patient" or "primary caregiver" may possess and provides limitations on the locations where those persons can keep marijuana plants and the number of plants they may keep. MCL 333.26424(a) and (b). Because the § 4 limitations apply in part to "qualifying patients," as opposed to "patients" generally, one might be tempted to conclude that these limitations cannot apply to § 8, which refers only to a "patient." See MCL 333.26428(a)(1) to (3). But the defense provided under § 8 does apply to a "primary caregiver," and § 4(b) limits the amount of marijuana and number of marijuana plants that the caregiver may lawfully possess similarly to how § 4(a) limits the amount of marijuana and number of marijuana plants that a qualifying patient may possess. Moreover, § 4(d) provides that there is a "presumption that a qualifying patient or primary caregiver is engaged in the medical use of marihuana" if he or she "is in possession of an amount of marihuana that does not exceed the amount allowed *under this act*." MCL 333.26424(d) (emphasis added). It is striking that the presumption provided under § 4(d) refers to the amount stated under this *act*, rather than under this *section*. Because the only true limitations on the amount of marijuana or marijuana plants that may be possessed are those stated under § 4, it appears that § 4(d) contemplates that the limitations stated under § 4(a) and (b) apply to the *whole act*. And it would seem absurd to permit a person who has not registered to possess marijuana and marijuana plants in excess of the amounts permitted for those persons who comply with the registration requirements. In any event, it is not necessary to resolve this question because, after the decision in *Redden*, a different panel

of this Court concluded that the limitations stated under § 4(a) and (b) do apply to the assertion of a defense under § 8.

In *King*, 291 Mich App at 505-506, the defendant was charged with manufacturing marijuana after police officers discovered marijuana growing in a dog kennel in his backyard and in an unlocked living room closet. After the defendant had been bound over for trial, he moved for the dismissal of his charges under § 8 of the MMA. *Id.* The trial court concluded that the defendant had complied with the MMA and dismissed the charges against him. *Id.* at 506-507.

On appeal, this Court disagreed with the trial court's conclusion that the defendant had complied with the MMA and was entitled to the dismissal of the charges against him under § 8. *Id.* at 505. The Court in *King* first addressed whether the limitations set forth in § 4 apply to the assertion of a defense under § 8. The Court determined that § 8(a) incorporated § 7 by stating that the defense applied " '[e]xcept as provided in section 7 . . . .' " *Id.* at 509, quoting MCL 333.26428(a) (alteration in *King*). The Court went on to note that § 7(a) provided that " '[t]he medical use of marihuana is allowed under state law *to the extent that it is carried out in accordance with the provisions of this act.*' " *King*, 291 Mich App at 509, quoting MCL 333.26427(a). Because the defendant was growing marijuana in a dog kennel that did not constitute an "enclosed, locked facility," MCL 333.26424(a), and in a closet that was not locked, the Court in *King* concluded that the defendant had not complied with the requirements stated under § 4 and, consequently, could not avail himself of the defense provided under § 8. *King*, 291 Mich App at 505 ("We disagree that defendant adhered to the requirements of § 4 of the [MMA] and therefore hold that

defendant is not entitled to the benefit of the protections of the [MMA].".). As such, this Court reinstated the charges against the defendant and remanded the matter for trial. *Id.* at 514. Although the defendant in *King* was a registered user, it is clear that the Court in *King* determined that the limitations set forth in § 4 applied to anyone asserting a § 8 defense—without regard to whether he or she was registered. See *id.* at 510 ("We further hold that the express reference to § 7 and the statement in § 7(a) that medical use of marijuana must be carried out in accordance with the provisions of the [MMA], require defendant to comply with the provisions of § 4 concerning growing marijuana.").

Therefore, in order to assert a medical-purpose defense under § 8, a patient must show that he or she acted in accordance with the provisions of the MMA; that is, the patient must show that he or she had 2.5 ounces or less of useable marijuana, had 12 or fewer marijuana plants, and had his or her plants in an "enclosed, locked facility." See MCL 333.26424(a) and (b). Further, even when an unregistered patient has marijuana within these limits, the patient must also show that the amount that he or she possessed did not exceed an amount that "was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms . . . ." MCL 333.26428(a)(2). I do not agree that § 8(a)(2) must be understood to permit a patient—registered or otherwise—to possess more marijuana or marijuana plants than permitted under § 4, as long as the patient can demonstrate that he or she needed the additional marijuana to ensure an uninterrupted supply of marijuana. Although the medical-purpose defense set forth in § 8(a)(2) refers to an amount of marijuana

or number of marijuana plants that is reasonably necessary to "ensure the uninterrupted availability" of marijuana, when read in light of the other provisions set forth in § 4, I conclude that this is an *additional limitation* to those set forth in § 4.

Under MCL 333.26424(d), a "qualifying patient" is presumed to be engaged in the "medical use" of marijuana if the patient is in possession of a registration card and in possession of an amount of marijuana or number of marijuana plants that does not exceed the limits stated under § 4(a). That is, a patient who is registered is entitled to immunity if he or she possesses not more than 2.5 ounces of marijuana and not more than 12 marijuana plants, even if the actual amounts exceed what the patient needs to ensure an uninterrupted supply of marijuana. Accordingly, a properly registered patient has an absolute defense under § 8(b) if he or she is properly registered and otherwise in compliance with § 4. In contrast, a patient who has not registered has no immunity under § 4. Notwithstanding that, the unregistered patient may still assert a defense under § 8, but must show that he or she has no more marijuana than permitted by § 4 *and* must show that that amount is reasonably necessary to ensure an uninterrupted supply of marijuana to treat his or her particular medical condition or symptoms. For that reason, it is possible for a finder of fact to conclude that a person who has an amount of marijuana or number of marijuana plants that is permitted under § 4 still has not met the elements of a defense under § 8 because, given the nature of the patient's serious or debilitating condition, the amount of marijuana or number of marijuana plants he or she actually possessed was greater than what was reasonably necessary to ensure an uninterrupted supply of marijuana to treat his or her medical condition or symptoms.

In addition to those proofs, the patient must also establish that he or she consulted with a physician during the course of a bona fide physician-patient relationship and, after a "full assessment of the patient's medical history and current medical condition," the physician "has stated" his or her professional opinion that the patient "is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate" the patient's serious or debilitating medical condition or the symptoms from such a condition. MCL 333.26428(a)(1). Finally, the patient must show that he or she was engaged in the "acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia . . . to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition." MCL 333.26428(a)(3).

### 2. ANDERSON'S MOTION FOR DISMISSAL

At the hearing on his motion for dismissal, Anderson presented evidence that he consulted with his family physician, Dr. McKeeby, before his arrest about whether marijuana might be a viable alternative to treat his back pain. McKeeby testified that she had been Anderson's physician for at least 10 years and had treated his chronic back pain throughout that period. She also stated that she had advised him that she thought he might benefit from the use of marijuana. Anderson further testified that he used marijuana for the specific purpose of treating his chronic back pain. Anderson presented evidence, through his own testimony, that he possessed less than a three-month supply of marijuana, and McKeeby testified that it was reasonable for a patient to maintain a three-month supply. On the basis

of this evidence, Anderson's trial counsel argued that Anderson had established a § 8 defense.

The trial court concluded otherwise. The trial court explained that "expert testimony" was "relevant" to establish the reasonableness of the amount that Anderson possessed because, citing MRE 702, this was not something a "lay person would know." Further, the trial court found that Anderson's "family doctor was not qualified to offer an opinion" because there was no evidence that "she has experience working with patients" that she treated with marijuana and because she had no "experience with dosage." As such, there was no evidence "on this issue . . . ." Given that there was no evidence to establish the reasonableness of the amount of marijuana that Anderson possessed, the court concluded that Anderson had not established that element of the § 8 defense. For that reason, it did not need to consider whether Anderson met any of the other elements of the § 8 defense.

On appeal, Anderson argues that he did not need an expert to establish that the amount of marijuana he possessed was reasonable; rather, he argues that he was in the best position to testify about his own marijuana needs. Because the MMA does not require the use of an expert, he maintains that the trial court erred to the extent that it imposed a higher evidentiary burden for that element of the § 8 defense. Although the trial court's opinion is not entirely clear, when read as a whole, one can plausibly argue that the trial court did conclude that Anderson needed to present expert testimony in order to establish the reasonableness of the amount of marijuana that he possessed. Had the trial court concluded otherwise, it would not have stated that there was no evidence to support this element; it would simply have found that this element had not been

met—notwithstanding the evidence actually presented. Therefore, I conclude that this Court should address this claim of error.

Typically, a trial court may not interfere with a prosecutor's decision to bring charges against a defendant. See *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672, 683-684; 194 NW2d 693 (1972) (noting that the prosecutor is the chief law enforcement officer of the county and stating that it would be a violation of the constitutional separation of powers for a trial court to claim the power to control the institution and conduct of prosecutions). Thus, a trial court may not dismiss the charges against a defendant over the prosecutor's objection unless specifically permitted by statute or on the basis of constitutionally insufficient evidence. See *People v Morris*, 77 Mich App 561, 563; 258 NW2d 559 (1977). It is plain that the MMA provides statutory authority for the dismissal of charges involving marijuana: "A person may assert the medical purpose for using marihuana in a motion to dismiss, and the charges shall be dismissed following an evidentiary hearing where the person shows the elements listed in [MCL 333.26428(a)]." MCL 333.26428(b). This subsection does not just authorize a trial court to dismiss charges involving a marijuana violation; it actually mandates dismissal. However, the trial court is only required to dismiss the charges after an "evidentiary hearing" in which the person moving for dismissal "shows" the elements stated under § 8(a). The statute does not specify the burden of proof applicable to the moving party's motion or clearly state whether the trial court has the authority to make findings of fact or resolve credibility disputes in making its determination. Michigan courts have long safeguarded a defendant's right to have a jury resolve factual disputes and make credibility determinations. See *People v Hamm*, 100

Mich App 429, 433; 298 NW2d 896 (1980) (characterizing the right to a jury in a criminal trial as "sacred"); see also Const 1963, art 1, § 20 (guaranteeing that, in every criminal prosecution, the "accused shall have the right to a speedy and public trial by an impartial jury"). The right to a fair and impartial jury extends also to the people, who have the right to have a jury that will ensure a "righteous verdict." *People v Bigge*, 297 Mich 58, 64; 297 NW 70 (1941) (quotation marks and citation omitted). And for that reason, this Court should not lightly conclude that the Legislature intended to grant trial courts the authority to usurp the role of the jury in determining whether a defendant has established a particular defense. See *People v Lemmon*, 456 Mich 625, 646-647; 576 NW2d 129 (1998) ("The question being one of credibility posed by diametrically opposed versions of the events in question, the trial court was obligated, 'despite any misgivings or inclinations to disagree,' to leave the test of credibility where statute, case law, common law, and the constitution repose it 'in the trier of fact.' "). As such, in the absence of any statutory guidance, I conclude that the proper standard for a trial court conducting a hearing under § 8 of the MMA is that applicable to a motion for a directed verdict of acquittal at a criminal trial. See *People v Riley (After Remand)*, 468 Mich 135, 139-140; 659 NW2d 611 (2003).

Accordingly, on a defendant's motion for dismissal under § 8 of the MMA, the trial court must hold an evidentiary hearing to provide the defendant with an opportunity to show the medical-purpose defense set forth in § 8. See MCL 333.26428(b). At the close of the hearing, the trial court must evaluate all the evidence in the light most favorable to the prosecution to determine whether there is a question of fact on any of the elements of the defense. See *Riley*, 468 Mich at 139-140

(noting that the trial court must evaluate a motion for a directed verdict by examining the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found the elements at issue). If no reasonable jury could find that the defendant had failed to establish a § 8 defense, then the trial court must dismiss the charges. MCL 333.26428(b). If, however, a reasonable jury could conclude that the defendant had not established one or more elements, then dismissal is not appropriate; rather, the case must be submitted to a jury on the merits. See *Lemmon*, 456 Mich at 646-647.

Turning to the evidentiary hearing at issue here, I conclude that even if Anderson did not need an expert to establish that the amount of marijuana and number of plants that he had were "reasonably necessary" under § 8(a)(2), he nevertheless was not entitled to the dismissal of the charge against him under § 8(b). As noted earlier in this opinion, a defendant may not assert a medical-purpose defense under § 8 unless the defendant first shows that he or she complied with the remainder of the MMA, which includes compliance with the limitations set forth in § 4. *King*, 291 Mich App at 510. In this case, it was undisputed that Anderson had a total number of marijuana plants that exceeded the limit of 12 provided in § 4. Further, it was undisputed that the plants that Anderson was growing behind his garage were not in an enclosed, locked facility. See MCL 333.26424(a). Because he failed to comply with the limitations on the possession of marijuana and marijuana plants set forth in § 4, he was not entitled to the dismissal of the charge against him under § 8(b). See *King*, 291 Mich App at 514 ("Because defendant failed to comply with the strict requirements in the [MMA] that he keep the marijuana in an 'enclosed, locked facility,' he is subject to prosecution . . . and the trial

court abused its discretion by dismissing the charges against defendant."). This is true without regard to whether the amount of marijuana and number of marijuana plants that Anderson possessed could otherwise be considered reasonably necessary to ensure an uninterrupted supply of marijuana to treat his medical condition or symptoms. Consequently, because he clearly failed to establish his § 8 defense on other grounds, it is unnecessary to determine whether Anderson had to present expert testimony in order to establish the reasonableness of the amount of marijuana or number of marijuana plants that he possessed. See, e.g., *Acox v Gen Motors Corp (On Remand)*, 192 Mich App 401, 408; 481 NW2d 749 (1991) (declining to address a statutory legal issue because consideration of the issue would be dicta given the Court's determination that the statute did not apply under the facts of the case).

I also do not believe that Anderson's testimony regarding the plants at issue altered the proof that he violated the § 4 limitations. At the evidentiary hearing, Anderson testified that he expected that only ½ of the marijuana plants growing behind his garage would be female after maturation and that only the female plants would produce useable marijuana. He also testified that he abandoned the plants that were found in his closet. Accordingly, Anderson implicitly invited the trial court to conclude that the male plants and abandoned plants should not be counted against his total when determining what was reasonably necessary to ensure an uninterrupted supply of marijuana. But at no place in the MMA did the drafters distinguish between immature and mature plants or between those that are male and female. Likewise, the MMA does not instruct that plants that have been abandoned—or indeed plants that are dead—should not be counted against a patient or caregiver's maximum permitted amount under § 4.

In contrast to the amount of marijuana that a patient may possess, § 4 does not even provide that the plants must be useable. See MCL 333.26424(a) (referring to "2.5 ounces of usable marihuana" and "12 marihuana plants"). Given this statutory language, I conclude that the reference to 12 marijuana plants is absolute; that is, one must count every marijuana plant regardless of its level of maturation or sex and without regard to whether the patient or caregiver intended to abandon the plant but had not yet destroyed it. Here, the undisputed proofs showed that Anderson had far more marijuana plants than permitted under § 4; consequently, he clearly did not—and could not—establish a ground for dismissal under § 8(b). Although the trial court arguably denied Anderson's motion on the basis of his failure to establish the reasonableness of the amount of marijuana that he possessed through an expert, even if the trial court erred in this regard, it nevertheless came to the correct result. Therefore, I would affirm its denial of Anderson's motion to dismiss. *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998).

### 3. THE TRIAL COURT'S DECISION TO PRECLUDE ANDERSON'S § 8 DEFENSE

Anderson plainly failed to establish the right to have the charge against him dismissed on his motion under § 8. Nevertheless, that fact alone does not necessarily preclude him from asserting the same defense at trial. Indeed, I disagree with the trial court's conclusion that a defendant who moves for dismissal under § 8 has elected his or her remedy and, for that reason, is categorically barred from raising a § 8 defense at trial in the event that he or she does not prevail on the motion. See *People v Kolanek*, 291 Mich App 227, 241-242; 804 NW2d 870 (2011) ("Because the statute does not pro-

vide that the failure to bring, or to win, a pretrial motion to dismiss deprives the defendant of the statutory defense before the fact-finder, defendant's failure to provide sufficient proofs pursuant to his motion to dismiss does not bar him from asserting the § 8 defense at trial nor from submitting additional proofs in support of the defense at that time."). Rather, as previously stated, whether a defendant has established an affirmative defense will typically be a matter for the jury. *Waltonen*, 272 Mich App at 690 n 5. It is, however, well settled that the defendant has the burden to establish a prima facie case for his or her affirmative defense by presenting some evidence on all the elements of that defense. *People v Lemons*, 454 Mich 234, 248; 562 NW2d 447 (1997); see also *People v Dempster*, 396 Mich 700, 713-714; 242 NW2d 381 (1976) (noting that a defendant normally bears the burden of showing by competent evidence that an exemption to a criminal statute applies to the facts of his or her case). And if the defendant fails to establish an element of his or her defense at trial, the trial court should not present the defense to the jury for consideration. See *People v Crawford*, 232 Mich App 608, 619; 591 NW2d 669 (1998) ("A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense."). It is also equally well settled that the Legislature can limit a defendant's ability to present an affirmative defense. See, e.g., *People v Carpenter*, 464 Mich 223; 627 NW2d 276 (2001).

The MMA provides an affirmative defense to prosecution for any marijuana offense, but that defense is quite limited. Because of those limitations, there may be situations when a defendant simply cannot establish the right to assert a § 8 defense. In such situations, a trial court might be warranted in barring a defendant

from presenting evidence or arguing at trial that he or she is entitled to the defense set forth in § 8(a). Therefore, I conclude that a trial court may bar a defendant from presenting evidence and arguing a § 8 defense at trial when, given the undisputed evidence, no reasonable jury could find that the elements of the § 8 defense had been met.

In this case, there is no dispute about the number of plants that Anderson possessed or that the plants were not kept in an enclosed, locked facility. No reasonable jury could, therefore, find that he had 12 or fewer plants or that the plants were in an enclosed, locked facility. Consequently, no reasonable jury could acquit Anderson on the basis of a § 8 defense. The trial court did not err when it precluded Anderson from presenting a § 8 defense at trial.

### III. CONCLUSION

Given the undisputed evidence that he possessed more than 12 marijuana plants and that he kept at least some of those plants in a place other than an enclosed, locked facility, Anderson could not establish the elements of a defense under § 8 of the MMA. For that reason, the trial court did not err when it denied his motion to dismiss the charge against him. Likewise, because no reasonable jury could find that Anderson qualified for the defense under § 8, the trial court did not err when it precluded him from presenting a defense under § 8 at trial.

I would affirm for these reasons.