PEOPLE v KING

Docket No. 294682. Submitted November 4, 2010, at Lansing. Decided
    February 3, 2011, at 9:00 a.m.

Larry S. King was charged in the 66th District Court with two counts
    of manufacturing marijuana after police officers found marijuana
    growing in a locked chain-link dog kennel in his backyard and in
    an unlocked closet inside his house. Defendant moved in the
    Shiawassee Circuit Court to quash the bindover or suppress
    evidence obtained in the search, raising various grounds and
    asserting the affirmative defense provided by the Michigan Medi-
    cal Marihuana Act (MMMA), MCL 333.26421 *et seq*. The court,
    Gerald D. Lostracco, J., concluding that the marijuana had been
    kept in an enclosed, locked facility as required by the act and that
    defendant was therefore entitled to the protection of the affirma-
    tive defense provision, dismissed the charges. The prosecution
    appealed.

The Court of Appeals *held*:

The MMMA did not abrogate state criminal prohibitions of the
    manufacturing of marijuana, but merely provided a procedure by
    which seriously ill individuals using marijuana for specified medi-
    cal purposes can be identified and protected from prosecution
    under state law. MCL 333.26428 allows a defendant to assert a
    defense to charges of violating the controlled substances laws if the
    statute's conditions are followed. MCL 333.26424(a) provides that
    marijuana plants cultivated for medical purposes must be kept in
    an enclosed, locked facility, which MCL 333.26423(c) defines as a
    closet, room, or other enclosed area equipped with locks or other
    security devices. A proper enclosure must be of the same kind or
    character as a closet or room, that is, stationary and closed on all
    sides, and the facility must have locks or other security devices
    limiting access to the licensed grower or qualifying patient. Be-
    cause the dog kennel was movable and not closed on all sides, it
    was not an enclosed facility, and because the closet in defendant's
    house was not locked and the home itself did not have locks on all
    the doors, the closet was also not an enclosed, locked facility. The
    trial court abused its discretion by dismissing the charges against
    defendant because he had not complied with the strict require-
    ments of the MMMA.

Reversed and remanded for further proceedings.

FITZGERALD, J., dissenting, would have held that the phrase "enclosed, locked facility" in MCL 333.26424(a) should be interpreted as understood by the voters who approved the MMMA. He concluded that both the dog kennel and defendant's house satisfied the definition of an enclosed, locked facility and that the trial court properly dismissed the charges.

CONTROLLED SUBSTANCES — MEDICAL MARIJUANA — CRIMINAL DEFENSES.

Marijuana plants cultivated for medical purposes must be kept in an enclosed, locked facility, which is defined under the Michigan Medical Marihuana Act as a closet, room, or other enclosed area equipped with locks or other security devices; under the statute, a proper enclosure must be similar to a closet or room, that is, it must be stationary and closed on all sides, and the facility must have locks limiting access to the person authorized under the act to grow the marijuana or the qualifying patient (MCL 333.26423[c], 333.26424[a]).

*Bill Schuette*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Randy O. Colbry*, Prosecuting Attorney, and *Sara Edwards*, Assistant Prosecuting Attorney, for the people.

*Matthew R. Abel* and *Alan L. Kaufman* for defendant.

Before: SAWYER, P.J., and FITZGERALD and SAAD, JJ.

SAAD, J. The prosecution appeals the trial court's order that dismissed two counts against defendant for the manufacture of a controlled substance (marijuana), MCL 333.7401(2)(d)(*iii*). For the reasons set forth in this opinion, we reverse and remand for further proceedings consistent with this opinion.

### I. NATURE OF THE CASE

Defendant, who was arrested for illegally growing marijuana, possesses a registry identification card under the Michigan Medical Marihuana Act (MMMA),

MCL 333.26421 *et seq.*, and claims that he is entitled to the limited protections of the MMMA because he complied with its statutory provisions. The trial court ruled that the charges against defendant must be dismissed because he satisfied the elements of the affirmative defense outlined in § 8 of the MMMA, MCL 333.26428. Though defendant timely raised a § 8 defense, he did not fulfill the requirements of § 8. Clearly, by its reference to § 7 of the MMMA, MCL 333.26427, § 8 required defendant to comply with other applicable sections of the MMMA, which includes the requirements set forth in § 4, MCL 333.26424, concerning the growing of marijuana. Furthermore, as a registered cardholder, defendant must comply with the provisions of § 4 concerning growing marijuana, MCL 333.26424(a). Also, defendant maintains, and the trial court erroneously ruled, that defendant complied with § 4 by growing the marijuana in an "enclosed, locked facility." We disagree that defendant adhered to the requirements of § 4 of the MMMA and therefore hold that defendant is not entitled to the benefit of the protections of the MMMA. The trial court abused its discretion when it dismissed the charges against him.

II. FACTS

The Michigan State Police received an anonymous tip that someone was growing marijuana in the backyard of a house at 710 Grace Street in Owosso. On May 13, 2009, Detective Sergeant Brian Fox and Deputy Jed Eisenberger drove to the address and saw a chain-link dog kennel behind the house. Though the sides of the kennel were covered with black plastic, some areas of the kennel were uncovered and, using binoculars, Deputy Eisenberger could see marijuana plants growing inside.

Detective Fox and Deputy Eisenberger went to the door of the house and spoke to defendant, who produced a medical-marijuana card that was issued on April 20, 2009. The officers asked defendant to show them the marijuana plants, and defendant unlocked a chain lock on the kennel. The kennel was six feet tall, but had an open top and was not anchored to the ground. Defendant disclosed that he had more marijuana plants inside the house. After they obtained a search warrant, the officers found marijuana plants growing inside defendant's unlocked living room closet.

As noted, defendant was charged with two counts of manufacturing marijuana. After the prosecutor presented his proofs at the preliminary examination, defendant moved to dismiss the charges under the affirmative defense section of the MMMA. The district court denied defendant's motion and bound defendant over for trial. In the circuit court, defendant filed a motion to quash the bindover or suppress the evidence obtained during the search. He also sought to dismiss the charges on various grounds. Among other arguments, defendant maintained that the search warrant was invalid because it was based on hearsay. Defendant also sought to assert an affirmative defense under the MMMA. In response, the prosecutor argued that the search warrant was valid and that defendant had failed to comply with the MMMA because he did not keep the marijuana in an enclosed, locked facility pursuant to MCL 333.26424(a).

The trial court issued an opinion and order on September 30, 2009. The court ruled that, because defendant had a medical-marijuana registry identification card and kept "a legal quantity" of marijuana in an enclosed, locked facility, there was no probable cause to support the issuance of the search warrant for his

home. Nonetheless, the court ruled that the evidence
seized during the search should not be suppressed
because the officers had acted in good-faith reliance on
the warrant. However, the court held that the officers
should not have seized the marijuana because defen-
dant complied with the requirements of the MMMA.
For the same reason, the court ruled that defendant was
entitled to assert an affirmative defense under the
MMMA, and it granted defendant's motion to dismiss
the charges.

### III. ANALYSIS

"We review a trial court's decision to grant or deny a
motion to dismiss charges for an abuse of discretion."
*People v Kevorkian*, 248 Mich App 373, 383; 639 NW2d
291 (2001). The prosecution contends that the trial
court incorrectly interpreted the meaning of "enclosed,
locked facility" in MCL 333.26424(a) and MCL
333.26423(c) and that it erred when it ruled that
defendant had complied with the statute. We review de
novo questions of statutory interpretation. *People v
Feezel*, 486 Mich 184, 205; 783 NW2d 67 (2010) (opinion
by CAVANAGH, J.). "When interpreting statutes, our goal
is to give effect to the intent of the Legislature by
reviewing the plain language of the statute." *People v
Perkins*, 473 Mich 626, 630; 703 NW2d 448 (2005).

Again, the prosecution charged defendant with vio-
lating Michigan's controlled substances act by growing
marijuana, but defendant maintains that he is entitled
to the protections from prosecution laid out in the
recently enacted MMMA. By passing statutes that
criminalize the possession, use, and manufacture of
controlled substances, including marijuana, our Legis-
lature and Congress have determined that such sub-

stances are harmful and prohibited.[1] As Judge
O'CONNELL observed in his concurrence in *People v
Redden*, 290 Mich App 65, 92; 799 NW2d 184 (2010):

> [T]he MMMA does not create any sort of affirmative *right*
> under state law to use or possess marijuana. That drug
> remains a schedule 1 controlled substance under the Public
> Health Code, MCL 333.7212(1)(c), meaning that "the sub-
> stance has high potential for abuse and has no accepted
> medical use in treatment in the United States or lacks
> accepted safety for use in treatment under medical supervi-
> sion," MCL 333.7211. The MMMA does not repeal any drug
> laws contained in the Public Health Code, and all persons
> under this state's jurisdiction remain subject to them. Accord-
> ingly, mere possession of marijuana remains a misdemeanor
> offense, MCL 333.7403(2)(d), and the manufacture of mari-
> juana remains a felony, MCL 333.7401(2)(d).

By its terms, the MMMA does not abrogate state
criminal prohibitions of the manufacturing of mari-

---

[1] The statute at issue here, MCL 333.7401, provides, in relevant part:

(1) Except as authorized by this article, a person shall not
manufacture, create, deliver, or possess with intent to manufacture,
create, or deliver a controlled substance, a prescription form, or a
counterfeit prescription form. A practitioner licensed by the admin-
istrator under this article shall not dispense, prescribe, or administer
a controlled substance for other than legitimate and professionally
recognized therapeutic or scientific purposes or outside the scope of
practice of the practitioner, licensee, or applicant.

(2) A person who violates this section as to:

* * *

(d) Marihuana or a mixture containing marihuana is guilty of
a felony punishable as follows:

* * *

(*iii*) If the amount is less than 5 kilograms or fewer than 20
plants, by imprisonment for not more than 4 years or a fine of not
more than $20,000.00, or both.

juana. Rather, the MMMA "merely provides a procedure through which seriously ill individuals using marijuana for its palliative effects can be identified and protected from prosecution under state law." *Redden*, 290 Mich App at 93 (O'CONNELL, P.J., concurring). Although these individuals continue to violate the Public Health Code by using marijuana, the MMMA sets forth narrow circumstances under which they can avoid criminal liability. In other words, the MMMA constitutes a determination by the people of this state that there should exist a very limited, highly restricted exception to the statutory proscription against the manufacture and use of marijuana in Michigan. As such, the MMMA grants narrowly tailored protections to qualified persons as defined in the act if the marijuana is grown and used for certain narrowly defined medical purposes. Further, the growing of marijuana is tightly constrained by specific provisions that mandate how, where, for what purpose, and how much marijuana may be grown.

Section 8 of the MMMA provides a defendant with an opportunity to assert a defense to the controlled substance laws if the conditions set forth in § 8 are followed. MCL 333.26428. Moreover, § 8 incorporates by reference other provisions of the MMMA with which a defendant must comply. Section 8 specifically states that a patient may assert a medical purpose defense to any marijuana prosecution, "[e]xcept as provided in section 7 . . . ." MCL 333.26428(a). Section 7(a) provides that "[t]he medical use of marihuana is allowed under state law *to the extent that it is carried out in accordance with the provisions of this act*." MCL 333.26427(a) (emphasis added). In *Redden*, this Court held that the statute permits an unregistered patient to assert the affirmative defense under § 8 if he or she meets the requirements of § 8. *Redden*, 290 Mich App at 81, 85.

We hold that § 8 permits a "registered qualifying patient" to raise an affirmative defense under § 8, just as an unregistered defendant may under *Redden*. We further hold that the express reference to § 7 and the statement in § 7(a) that medical use of marijuana must be carried out in accordance with the provisions of the MMMA require defendant to comply with the provisions of § 4 concerning growing marijuana. And in any case, § 4 applies to defendant because he grew marijuana under a claim that he is a qualifying patient in possession of a registry identification card.[2] We hold that because defendant did not comply with § 4, he also failed to meet the requirements of § 8 and, therefore, he is not entitled to the affirmative defense in § 8 and is not entitled to dismissal of the charges.

Section 4(a), MCL 333.26424(a), provides, in relevant part:

> A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility.

---

[2] This holding is supported by the ballot proposal itself, Proposal 08-1, which stated that certain registered patients would be permitted to cultivate marijuana within certain restrictions. The proposal specifically provided that the law would "[p]ermit registered individuals to grow limited amounts of marijuana for qualifying patients in an enclosed, locked facility."

The MMMA defines "enclosed, locked facility" as follows: " 'Enclosed, locked facility' " means a closet, room, or other enclosed area equipped with locks or other security devices that permit access only by a registered primary caregiver or registered qualifying patient." MCL 333.26423(c).

We hold that the trial court incorrectly interpreted and applied the phrase "enclosed, locked facility." As this Court recently opined in *Redden*,

> [t]his issue presents a question of statutory interpretation. We review de novo issues of statutory interpretation. *People v Stone Transp, Inc*, 241 Mich App 49, 50; 613 NW2d 737 (2000). Generally, the primary objective in construing a statute is to ascertain and give effect to the Legislature's intent. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The MMMA was enacted as a result of an initiative adopted by the voters. "The words of an initiative law are given their ordinary and customary meaning as would have been understood by the voters." *Welch Foods, Inc v Attorney General*, 213 Mich App 459, 461; 540 NW2d 693 (1995). We presume that the meaning as plainly expressed in the statute is what was intended. *Id.* This Court must avoid a construction that would render any part of a statute surplusage or nugatory, and "[w]e must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme." *People v Williams*, 268 Mich App 416, 425; 707 NW2d 624 (2005). [*Redden*, 290 Mich App at 76-77.]

As noted, the phrase "enclosed, locked facility" is defined by the MMMA to mean "a closet, room, or other enclosed area equipped with locks or other security devices . . . ." MCL 333.26423(c). As described earlier, defendant grew several marijuana plants in his backyard, within a chain-link dog kennel that was only partially covered on the sides with black plastic. The kennel had a lock on the chain-link door, but had no

fencing or other material over the top, and it could be lifted off the ground. Defendant maintains that the kennel constitutes an "enclosed area" within the definition of "enclosed, locked facility" and, therefore, that he complied with the statute. The trial court simply based its interpretation of "other enclosed area" on the definition of "enclose" in Black's Law Dictionary and concluded, without analysis, that the kennel complied with this definition.[3]

The trial court's interpretation and application of the phrase "enclosed, locked facility" is contrary to settled rules of statutory construction. The statutory reference to "other enclosed area" within the definition of "enclosed, locked facility" is a general phrase that follows the words "closet" and "room," both of which have specific, limited meanings and which have the common characteristic of being stationary and closed on all sides. It would frustrate the intent of the MMMA to read the definition of "enclosed, locked facility" as meaning something akin to a moveable fence simply on the basis of a dictionary definition when the enumerated examples that precede "other enclosed area" suggest a much greater level of protected confinement.

Our courts must give effect to the language in the statute and elucidate the intent of the voters by considering not only the words themselves, but their placement and purpose in the statutory scheme. To that end, it is appropriate here to apply the doctrine of statutory construction *ejusdem generis*, which provides that "the scope of a broad general term following a series of items is construed as including 'things of the same kind, class, character, or nature as those specifically enumer-

---

[3] Moreover, we observe that the trial court cited a definition that specifies enclosure on all sides, but nonetheless concluded that the open-top kennel satisfies the definition.

ated . . . .' " *People v Thomas*, 263 Mich App 70, 76; 687 NW2d 598 (2004), quoting *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 349; 656 NW2d 175 (2003), and *Huggett v Dep't of Natural Resources*, 464 Mich 711, 718-719; 629 NW2d 915 (2001). Under the doctrine, "other enclosed area" would, thus, be limited to things of the same kind or character as a closet or room. An open, moveable, chain-link kennel is not of the same kind or character as a closet or room. We further observe that the examples given in the statutory definition are followed by the additional requirement that the closet, room, or other enclosed area be equipped with locks or other security devices that permit access only by the registered caregiver or qualifying patient. In context, the clear purpose of specifying that the marijuana be kept within a secure facility is to ensure that it is inaccessible to anyone other than a licensed grower or a qualifying patient, as defined in the MMMA, for the limited purpose set forth in the MMMA. Moreover, these provisions are obviously meant to prevent access by the general public and, especially, juveniles. This reading of the MMMA is consistent with its limited protections for a narrowly defined group of medical users of a controlled substance, the general cultivation and use of which remains illegal under both state and federal law. Reading the statute broadly as the trial court did to permit marijuana to be kept in the type of space used by defendant would, quite simply, undermine the plain language and purpose of the statutory provisions.

We further hold that although the plants inside defendant's home were kept in a closet, which is the type of enclosure specifically enumerated in the statute, it is undisputed that there was no lock on the closet door. The statute explicitly states that the enclosed area itself must have a lock or other security device to

prevent access by anyone other than the person licensed to grow marijuana under the MMMA. An unlocked closet would permit access by anyone else within the home, and it appears that the home itself was not secured by locks on all of the doors. The trial court's conclusion that defendant acted as a "security device" for the marijuana growing inside his home is pure sophistry and belied by defense counsel's unsurprising admission at oral argument in this Court that, at times, defendant left the property, thus leaving the marijuana without a "security device" and accessible to someone other than defendant as the registered patient.

Because defendant failed to comply with the strict requirements in the MMMA that he keep the marijuana in an "enclosed, locked facility," he is subject to prosecution under MCL 333.7401(2)(d)(*iii*), and the trial court abused its discretion by dismissing the charges against defendant.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

SAWYER, P.J., concurred.

FITZGERALD, J. (*dissenting*). I respectfully dissent.

The police had received an anonymous tip that defendant was growing marijuana in his backyard. The police then drove to the driveway of defendant's neighbor. Using binoculars, the police were able to observe marijuana plants growing in a dog kennel in defendant's backyard. The dog kennel was made of six-foot-high chain-link fence covered with black shrink-wrap. The police were able to see that a section of the shrink-wrap had been detached. They then approached defendant's home, knocked on the door, and asked if defendant had a medical-marijuana card. Defendant

produced his card. The police then asked if defendant would allow them to see the plants. Defendant went back inside the house to obtain the key to the lock on the kennel. He then went with officers around the house and opened the lock on the kennel. The officers asked if he had more marijuana in the home. Defendant stated that he did, but that the officers would need a search warrant. The police then obtained a search warrant. Six marijuana plants, processed marijuana, and plants in various states of processing were found inside the home.

Defendant moved to dismiss the charges of manufacturing marijuana pursuant to the Michigan Medical Marihuana Act (MMMA),[1] MCL 333.26421 *et seq.* The MMMA was passed by initiative on November 4, 2008, and went into effect soon thereafter. The MMMA declares that in "changing state law," the act was designed to "have the practical effect of protecting from arrest the vast majority of seriously ill people who have a medical need to use marihuana." MCL 333.26422(b). The MMMA further declares that the laws of certain other states "do not penalize the medical use and cultivation of marihuana. Michigan joins in this effort for the health and welfare of its citizens." MCL 333.26422(c). Such declarations reveal the intent that the MMMA be used not as a sword against those who have a medical need to use marijuana, but as a shield.

MCL 333.26424(a) of the MMMA allows a qualifying patient who has been issued a registry identification card to possess 2.5 ounces of marijuana and to cultivate 12 marijuana plants (if the patient has not designated a primary caregiver) and not be subject to arrest or

---

[1] Although the statute spells it "marihuana," unless used in a direct quotation, I have spelled it throughout as "marijuana," as that is the more commonly used spelling.

prosecution for possession of the marijuana or for growing the plants. Specifically, MCL 333.26424(a) states:

> A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an *enclosed, locked facility.* [Emphasis added.]

There is no dispute that defendant is a qualifying patient in possession of a valid registry card.[2] The prosecution argues that defendant was not entitled to the protection of this statutory section because he was not growing his marijuana plants in an enclosed, locked facility. In particular, the prosecution asserts that the dog kennel in defendant's backyard was not an enclosed, locked facility because it lacked a roof or a top and was movable. Additionally, the prosecution asserts that defendant's house was not an enclosed, locked facility because the back door lacked a lock.

The narrow issue before this Court is the interpretation of the term "enclosed, locked facility" as used in MCL 333.26423(c) of the MMMA. Questions of statutory interpretation are reviewed de novo. *People v Feezel,* 486 Mich 184, 205; 783 NW2d 67 (2010) (opinion by CAVANAGH, J.).

---

[2] The prosecution does not dispute that defendant was entitled to possess 2.5 ounces of marijuana.

The purpose of statutory construction is to discern and give effect to the intent of the Legislature. *Feezel*, 486 Mich at 205. The MMMA was enacted as a result of an initiative adopted by the voters. The words of an initiated law are given their ordinary and customary meaning as the voters would have understood them. In the absence of a statutorily provided definition, a statutory term will be given its ordinary meaning. *People v Peals*, 476 Mich 636, 641; 720 NW2d 196 (2006). The ordinary meaning of a term may be discerned by consideration of dictionary definitions. *People v Perkins*, 473 Mich 626, 639; 703 NW2d 448 (2005). This Court presumes that the meaning as plainly expressed in the statute is what was intended. *People v Redden*, 290 Mich App 65, 76; 799 NW2d 184 (2010).

The MMMA defines "enclosed, locked facility" as follows: " 'Enclosed, locked facility' means a closet, room, or other enclosed area equipped with locks or other security devices that permit access only by a registered primary caregiver or registered qualifying patient." MCL 333.26423(c).

Clearly, the outdoor dog kennel could only qualify as an enclosed, locked facility under the term "other enclosed area." MCL 333.26423(c) does not define the word "enclosed." *Random House Webster's College Dictionary* (1997) contains the following definitions of "enclose": "1. to close in on all sides; shut in. 2. to surround, as with a fence; *to enclose land*. 3. to insert in the same envelope, package, etc.: *to enclose a check*. 4. to contain or hold." Under these definitions, the dog kennel in this case would fall under the definition of "other enclosed area." The chain-link walls of the kennel were six feet high, and the area surrounded by the chain-link walls was closed in on all sides. Like a fence that surrounds land (as in the dictionary ex-

ample), the kennel did not have a top, but, by dictionary definition, a top is not required to "enclose" something."[3] Defendant covered the walls of the kennel with black shrink-wrap in an attempt to conceal the contents of the enclosure. Additionally, the kennel was equipped with a lock, and defendant maintained the key to the lock, thereby satisfying the additional requirement that the "other enclosed area" be equipped with locks or other security devices that permit access only by a registered primary caregiver or registered qualifying patient. MCL 333.26423(c). Thus, in my view, the dog kennel qualified as an "enclosed, locked facility."

The prosecution further argues that defendant's house was not an enclosed, locked facility because the back door did not have a lock. MCL 333.26423(c) requires that such a facility be equipped with "locks" or "other security devices." The term "other security devices" is not defined in the MMMA. The dictionary defines a "device" as "1. a thing made for a particular purpose, [especially] a mechanical, electric, or electronic invention or contrivance." *Random House Webster's College Dictionary* (1997). Given that the statutory definition of an "enclosed, locked facility" allows for not only locks, but also "other security devices" to be used, the term "locked" should be broadly interpreted. Indeed, it appears from the use of the term "other security devices" that the intent is that the facility be "secure."

Michigan State Police Detective Sergeant Brian Fox presented testimony at the preliminary examination that the back door of defendant's home did not have a knob and that he did not "think" that defendant was

---

[3] Contrary to the prosecution's suggestion, nothing in the statutory definition of "enclosed, locked facility" prevents the facility from being movable.

able "to lock or to keep the house secure." However, the lack of a knob on the back door does not necessarily mean that defendant's house was not secure. As the statutory definition makes clear, the door could have been secured by other devices. Some other "contrivance" for securing or fastening would satisfy the statute. Although Fox testified that he did not see a board that kept the door closed from the inside, that does not mean that there was no mechanism to keep the door secure. In my view, in the absence of evidence that persons other than defendant had access to or actually entered the home, defendant's home satisfied the definition of "enclosed, locked facility."

Furthermore, the definition of "enclosed, locked facility" reveals the people's intent that the marijuana being cultivated be accessible only by a registered primary caregiver or registered qualifying patient. In other words, the concern is that the marijuana being cultivated not be accessible by anyone other than a registered primary caregiver or registered qualifying patient. As previously noted, the declared intent of the MMMA is "to protect[] from arrest the vast majority of seriously ill people who have a medical need to use marihuana." MCL 333.26422(b). Rather than rigid definitions of "other enclosed area," "locked," and "other security device," the true key to determining whether defendant's dog kennel and home were enclosed, locked facilities for purposes of the MMMA is to determine whether access to the marijuana in the dog kennel and the house was possible "only by a primary caregiver or registered qualifying patient." MCL 333.26423(c).

The evidence in the record indicates that the dog kennel where defendant was growing marijuana was located in his backyard. The walls of the kennel were

made of six-foot-high chain-link fence wrapped in black plastic. Parts of the black plastic had blown open, allowing Fox and another deputy to see defendant's marijuana from the street with the use of binoculars. The kennel was locked, and Fox and the deputy were only able to access it after defendant obtained a key for the lock from his house. The prosecution did not allege that anyone had attempted to steal defendant's marijuana plants. Rather, the prosecution argued that access to the marijuana plants was not limited to defendant because someone could move the kennel or climb over the six-foot walls to access the marijuana plants. However, the evidence presented at the preliminary examination revealed that defendant had to obtain a key to gain access to the marijuana. No evidence was presented that anyone had tried to move the kennel or climb over the kennel to obtain the marijuana. In fact, no evidence was presented that anyone other than defendant had access to the marijuana. The prosecution's argument is premised solely on a set of hypothetical facts.

Similarly with respect to defendant's house, we need not find a rigid definition for "locked" that requires the use of a key. Instead, the determination to be made is whether only defendant had access to the marijuana in his house. Defendant refused to allow Fox and the other officer access to his house. The police obtained access to the house only by securing a search warrant. No evidence was presented that anyone other than defendant had access to the house. I would conclude that defendant was growing marijuana in accordance with the provisions of the MMMA. The evidence from the preliminary examination reveals that access to both the kennel and the house was limited to defendant, which was sufficient for purposes of MCL 333.26424.

I find it worthy to note that this is not a case involving an individual who was trying to flout the clear prohibitions of the Public Health Code and engage in recreational use of marijuana. This is a case involving an individual who went through the necessary procedure to become a qualifying patient who was issued a valid registry identification card. The MMMA's susceptibility to multiple interpretations should not result in the use of the act as a sword rather than a shield under the circumstances of this case.

I would affirm the learned circuit judge's dismissal of the charges against defendant.