PEOPLE v BYLSMA

Docket No. 302762. Submitted September 7, 2011, at Grand Rapids.
    Decided September 27, 2011, at 9:05 a.m. Affirmed in part,
    reversed in part, and remanded, 493 Mich 17.

   Ryan M. Bylsma, a registered primary caregiver under the Michigan
   Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, was
   charged in the Kent Circuit Court with manufacturing marijuana
   in violation of MCL 333.7401(2)(d)(*iii*). Defendant moved to dis-
   miss the charge, asserting that as the registered primary caregiver
   of two registered qualifying patients, he was allowed to possess 24
   marijuana plants and that the remainder of the 88 plants seized by
   the police from the defendant's leased unit in a building belonged
   to other registered primary caregivers and registered qualifying
   patients whom defendant had offered to assist in growing and
   cultivating the plants. The court, George S. Buth, J., denied the
   motion, holding that the MMMA contains the strict requirement
   "that each set of 12 plants permitted under the MMMA to meet the
   medical needs of a specific qualifying patient must be kept in an
   enclosed, locked facility that can only be accessed by one indi-
   vidual," that defendant had failed to comply with that require-
   ment, and that defendant was therefore not entitled to invoke
   either the immunity provided by § 4(b) of the MMMA, MCL
   333.26424(b), or the affirmative defense contained in § 8 of the
   MMMA, MCL 333.26428. Defendant appealed by leave granted.

       The Court of Appeals *held*:

       1. The MMMA provides that a registered qualifying patient
   may have no more than one registered primary caregiver and a
   registered primary caregiver may assist no more than five regis-
   tered qualifying patients. MCL 333.26426(d). There is a presump-
   tion that a registered qualifying patient or a registered primary
   caregiver is engaged in the medical use of marijuana in accordance
   with the provisions of the MMMA if the patient or the primary
   caregiver possesses a registry identification card and possesses an
   amount of marijuana that does not exceed the amount allowed
   under the MMMA. MCL 333.26424(d). Defendant, the registered
   primary caregiver for two qualifying patients, was immune from
   arrest, prosecution, or penalty in any manner provided, in part,
   that he did not possess more than 24 marijuana plants. MCL

333.26424(b). Defendant does not dispute that, under the facts of this case, he was in possession of all the 88 plants seized.

2. The plain language of MCL 333.26424(a) and (b) provides that only one person may possess 12 marijuana plants for each specific registered qualifying patient's medical use of marijuana. That person is either the registered qualifying patient himself or herself, if the patient has not specified that a primary caregiver be allowed to cultivate his or her marijuana plants, or the patient's primary caregiver, if the patient has specified that the caregiver be allowed to cultivate his or her marijuana plants. Under the plain language of § 6 of the MMMA, MCL 333.26426, the registered qualifying patient or the qualifying patient's registered primary caregiver, but not both, may possess marijuana plants for the patient's medical use of marijuana.

3. Because the MMMA did not repeal any of the provisions of the Public Health Code making it illegal for a person to possess, use, manufacture, create, or deliver marijuana, any possession of marijuana that does not fall within the narrowly tailored protections of the MMMA remains illegal under the Public Health Code.

4. Defendant was not authorized to possess the marijuana plants that were being grown and cultivated for registered qualifying patients that he was not connected to through the Michigan Department of Community Health's registration process. Those plants could only be possessed by the registered qualifying patient for whose treatment they were grown or the qualifying patient's registered primary caregiver. Defendant was not entitled to the presumption that he was engaged in the medical use of marijuana provided in § 4(d) of the MMMA or the immunity granted in § 4(b) of the MMMA with regard to those plants. The trial court's determination that defendant is not entitled to invoke the immunity provided in § 4(b) must be affirmed, albeit for a different reason than that relied on by the trial court. The trial court properly held that, having failed to comply with the requirements of § 4(b) of the MMMA, defendant was not entitled to the affirmative defense provided in § 8 of the MMMA.

Affirmed.

1. CONTROLLED SUBSTANCES — MEDICAL MARIJUANA — PRESUMPTIONS.

There is presumption that a person who is either a registered qualifying patient or a registered primary caregiver under the Michigan Medical Marihuana Act is engaged in the medical use of marijuana in accordance with the provisions of the act if the

person possesses a registry identification card and an amount of marijuana that does not exceed the amount allowed under the act (MCL 333.26424[d]).

2. CONTROLLED SUBSTANCES — MEDICAL MARIJUANA — POSSESSION OF MARIJUANA FOR MEDICAL USE.

Only one person may possess 12 marijuana plants for each specific registered qualifying patient's medical use of marijuana under the Michigan Medical Marihuana Act; that person is either the patient, if the patient has not specified that a registered primary caregiver be allowed to cultivate his or her marijuana plants, or the patient's primary caregiver, if the patient has specified that the caregiver be allowed to cultivate the patient's marijuana plants; either the registered qualifying patient or the qualifying patient's registered primary caregiver, but not both, may possess the plants for the patient's medical use of marijuana (MCL 333.26426).

3. CONTROLLED SUBSTANCES — MEDICAL MARIJUANA — POSSESSION OF MARIJUANA FOR MEDICAL USE — PRESUMPTIONS — IMMUNITY — AFFIRMATIVE DEFENSES.

A registered primary caregiver under the Michigan Medical Marihuana Act may not possess marijuana plants that were not grown and cultivated for registered qualifying patients to whom the caregiver is connected to through the Michigan Department of Community Health's registration process; a primary caregiver who violates this provision is not entitled to the presumption in § 4(d) of the act that he or she was engaged in the medical use of marijuana, the immunity provided by § 4(b) of the act, or the affirmative defense provided in § 8 of the act (MCL 333.26424[b] and [d]; MCL 333.26428).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, and *Timothy K. McMorrow* and *Gary A. Moore*, Assistant Prosecuting Attorneys, for the people.

*Bruce Alan Block* and *Joel T. Brusk* for defendant.

Before: GLEICHER, P.J., and HOEKSTRA and STEPHENS, JJ.

HOEKSTRA, J. In this case involving the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et*

*seq.*, defendant appeals by leave granted the trial court's order denying his motion to dismiss a charge of manufacturing marijuana,[1] MCL 333.7401(2)(d)(*iii*). Under the MMMA, a registered primary caregiver is allowed to possess 12 marijuana plants for each registered qualifying patient the primary caregiver is connected to through the Michigan Department of Community Health's (MDCH) registration process. Because defendant possessed marijuana plants that were being grown and cultivated for registered qualifying patients that were not connected to him through the MDCH's registration process, defendant was not entitled to immunity under § 4(b) of the MMMA, MCL 333.26424(b). In addition, because defendant did not comply with the requirements of § 4(b), defendant is not entitled to assert the § 8 affirmative defense of medical purpose, MCL 333.26428. For these reasons, we affirm the trial court's order denying defendant's motion to dismiss.

## I. FACTS AND PROCEDURAL HISTORY

On September 15, 2010, the Grand Rapids police, acting under a search warrant, seized 88 marijuana plants that were in three grow booths in Unit 15E of the building at 470 Market Avenue. Unit 15E was leased to defendant. The police also discovered five ounces of usable marijuana, fertilizer, soil, a water-osmosis system, grow lights, and security cameras. In addition, the police found photocopies of defendant's primary caregiver cards for two patients, letters from the MDCH approving defendant's status as a primary caregiver, and an expired card for a third patient who had desig-

---

[1] Although the statutory provisions at issue refer to "marihuana," by convention this Court uses the more common spelling "marijuana" in its opinions.

nated defendant as his primary caregiver. The police also found MDCH paperwork showing that defendant's brother, Eric Bylsma, was a registered primary caregiver.

Defendant was charged with manufacturing marijuana, MCL 333.7401(2)(d)(*iii*), subject to an enhanced sentence under MCL 333.7413(2). Defendant moved to dismiss the charge under § 4 of the MMMA. He asserted that, as the registered primary caregiver of two qualifying patients, he was allowed to possess 24 marijuana plants, and he claimed that the remainder of the 88 plants seized by the police belonged to other primary caregivers and qualifying patients. Defendant argued that the MMMA permits primary caregivers and qualifying patients to share a common grow area for their marijuana plants, as long as the plants are grown in a secured area. In addition, defendant "reserve[d] his right to raise the Affirmative Defense under Section 8 of the MMMA" at trial. The trial court held a two-day evidentiary hearing on defendant's motion to dismiss.

Defendant testified that, on September 15, 2010, he was the registered primary caregiver for two qualifying patients. He had leased Unit 15E to grow marijuana. According to defendant, Unit 15E was "exactly what [he] needed"; it had a large steel door and a lock on the front of the building, so that Unit 15E was "double locked." It was a "secured, safe location." Defendant built three grow booths, each with a latch, in Unit 15E to grow marijuana plants. Defendant testified that 24 of the 88 marijuana plants seized on September 15, 2010, belonged to him and were being grown for his two qualifying patients. The remaining plants belonged to other primary caregivers or qualifying patients, most of whom defendant had offered to assist in growing and cultivating the plants. According to defendant, it was

"pretty obvious" which plants belonged to which caregivers and patients because the plants were of different strains and each plant had a tag.

The other primary caregivers and qualifying patients that had marijuana plants growing in Unit 15E also testified at the evidentiary hearing. Each presented a registry identification card from the MDCH.

James Wagner testified that he was a registered qualifying patient, who was serving as his own caregiver. However, defendant had agreed to assist Wagner by providing him with 12 "start-up plants." After the 12 marijuana plants had roots, defendant would give them to Wagner and Wagner would continue to grow them for his medication. The 12 plants were being kept in Unit 15E. Wagner had never been to Unit 15E.

Nathaniel Dixon testified that he was a registered primary caregiver for one qualifying patient. He was in the process of building his own grow room, but until the room was completed, he was growing 12 marijuana plants for his patient in Unit 15E. Because Dixon knew little about how to grow marijuana plants, defendant was training him. Dixon had been to Unit 15E four or five times to care for his plants. Dixon did not know which grow booth contained his plants, but he would be able to recognize his pots.

Shannon VanderZee testified that he was a registered primary caregiver for three patients. He attempted to grow marijuana plants in his basement. When his attempts were unsuccessful, he consulted with defendant. Defendant took 12 "cuttings and clones," as well as some fresh cuttings, from VanderZee, with the intent to fix the plants. Once the marijuana plants were rooted, defendant was to return them to VanderZee. VanderZee had never been to Unit 15E, but he believed that the 12 plants defendant had taken from his basement belonged to him.

Lawrence Huck testified that he was a registered qualifying patient and a registered primary caregiver. Defendant was serving as Huck's primary caregiver. Huck had attempted to grow marijuana plants, but was unsuccessful. Huck took four plants to defendant for assistance. He left the plants with defendant at Unit 15E, where defendant cared for the plants while teaching Huck how to do so. Huck visited Unit 15E three or four times.

Eric Bylsma testified that he was a registered qualifying patient and a registered primary caregiver for one qualifying patient. Twenty-four of the seized plants belonged to him; 12 were for him as a patient, and 12 were for the patient for whom he served as primary caregiver. Eric did not know which grow booth contained his marijuana plants because he had not been to Unit 15E for a couple of days and the plants got moved around depending on which light they needed to be under. He testified that he could identify his plants by looking at them.

The trial court denied defendant's motion to dismiss. According to the trial court, the MMMA contains the strict requirement "that each set of 12 plants permitted under the MMMA to meet the medical needs of a specific individual be kept in an enclosed, locked facility that can only be accessed by one person." Because the evidence demonstrated that Unit 15E was secured by a single lock, that several primary caregivers and qualifying patients used Unit 15E to grow marijuana plants, and that defendant had access to marijuana plants designated for qualifying patients to whom he was not linked through the MDCH's registration system, the trial court held that defendant had failed to comply with the strict requirements of the MMMA. Thus, the trial court held that defendant was not entitled to invoke the

immunity provided by § 4 of the MMMA or to assert the affirmative defense contained in § 8.

II. ANALYSIS

On appeal, defendant argues that the trial court read into the MMMA a requirement not contained within the plain language of the MMMA when it held that each set of 12 marijuana plants permitted under the MMMA for the medical needs of a specific qualifying patient must be kept in a separate enclosed, locked facility that can only be accessed by one individual. According to defendant, nothing in the language of the MMMA prohibits primary caregivers and qualifying patients from utilizing the same enclosed, locked facility to grow and cultivate marijuana plants.

A. STANDARDS OF REVIEW

We review a trial court's decision on a motion to dismiss charges for an abuse of discretion. *People v Kevorkian*, 248 Mich App 373, 383; 639 NW2d 291 (2001). However, we review de novo the trial court's interpretation of the MMMA. *Michigan v McQueen*, 293 Mich App 644, 653; 811 NW2d 513 (2011). The MMMA was enacted as a result of an initiative adopted by the voters in the November 2008 election. *Id.* at 658.

> "The words of an initiative law are given their ordinary and customary meaning as would have been understood by the voters." *Welch Foods, Inc v Attorney General*, 213 Mich App 459, 461; 540 NW2d 693 (1995). We presume that the meaning as plainly expressed in the statute is what was intended. *Id.* This Court must avoid a construction that would render any part of a statute surplusage or nugatory, and "we must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme." *People v Williams*, 268

Mich App 416, 425; 707 NW2d 624 (2005). [*People v Redden*, 290 Mich App 65, 76-77; 799 NW2d 184 (2010) (alteration omitted).]

### B. THE MMMA

Under the Public Health Code (PHC), MCL 333.1101 *et seq.*, it is illegal for a person to possess, use, manufacture, create, or deliver marijuana. *McQueen,* 293 Mich App at 658; see also MCL 333.7401(2)(d); MCL 333.7403(2)(d); MCL 333.7404(2)(d). Pursuant to § 7(a) of the MMMA, the "medical use of marihuana is allowed under state law to the extent that it is carried out in accordance with the provisions" of the MMMA.[2] MCL 333.26427(a). Nonetheless, the MMMA operates under the framework established by the PHC, *McQueen,* 293 Mich App at 658, because the MMMA did not repeal any drug laws, *Redden,* 290 Mich App at 92 (O'CONNELL, P.J., concurring). Rather, the MMMA sets forth very limited circumstances under which those involved with the use of marijuana may avoid criminal liability. *People v King,* 291 Mich App 503, 509; 804 NW2d 911 (2011).

### 1. SECTION 4 IMMUNITY

The MMMA provides a registration system for "qualifying patients" and "primary caregivers."[3] See MCL 333.26426. When applying for a "registry identi-

---

[2] The "medical use" of marijuana is defined as "the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition." MCL 333.26423(e).

[3] A "qualifying patient" is "a person who has been diagnosed by a physician as having a debilitating medical condition." MCL 333.26423(h). A "primary caregiver" is "a person who is at least 21 years old and who

fication card" with the MDCH,[4] a qualifying patient must indicate whether the patient will have a primary caregiver and, if so, must designate "whether the qualifying patient or primary caregiver will be allowed under state law to possess marihuana plants for the qualifying patient's medical use." MCL 333.26426(a)(5) and (6). If the MDCH approves the qualifying patient's application, it must issue a registry identification card to the patient and, if the patient has designated a primary caregiver, it must also issue a registry identification card to the primary caregiver. MCL 333.26426(a) and (d). However, a qualifying patient may have no more than one primary caregiver, and a primary caregiver may assist no more than five qualifying patients. MCL 333.26426(d).

Section 4 of the MMMA provides immunity from arrest and prosecution to qualifying patients and primary caregivers who have been issued and possess a registry identification card. MCL 333.26424(a) and (b); *McQueen*, 293 Mich App at 660-661. Specifically, § 4 provides, in pertinent part:

> (a) A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana, and,

---

has agreed to assist with a patient's medical use of marihuana and who has never been convicted of a felony involving illegal drugs." MCL 333.26423(g).

[4] A "registry identification card" is "a document issued by the [MDCH] that identifies a person as a registered qualifying patient or registered primary caregiver." MCL 333.26423(i).

if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility. Any incidental amount of seeds, stalks, and unusable roots shall also be allowed under state law and shall not be included in this amount.

(b) A primary caregiver who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for assisting a qualifying patient to whom he or she is connected through the [MDCH's] registration process with the medical use of marihuana in accordance with this act, provided that the primary caregiver possesses an amount of marihuana that does not exceed:

(1) 2.5 ounces of usable marihuana for each qualifying patient to whom he or she is connected through the [MDCH's] registration process; and

(2) for each registered qualifying patient who has specified that the primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility; and

(3) any incidental amount of seeds, stalks, and unusable roots.

In addition, there is a presumption that a qualifying patient or a primary caregiver is engaged in the medical use of marijuana in accordance with the provisions of the MMMA if the qualifying patient or the primary caregiver (1) possesses a registry identification card and (2) possesses an amount of marijuana that does not exceed the amount allowed under the MMMA. MCL 333.26424(d).

Here, on September 15, 2010, defendant was the registered primary caregiver for two qualifying patients. Therefore, defendant was immune from "arrest,

prosecution, or penalty in any manner," provided, in part, that he did not possess more than 24 marijuana plants. MCL 333.26424(b). The Court in *McQueen*, 293 Mich App at 654, explained the concept of possession:

> The term "possession," when used in regard to controlled substances, "signifies dominion or right of control over the drug with knowledge of its presence and character." *People v Nunez*, 242 Mich App 610, 615; 619 NW2d 550 (2000) (quotation marks and citation omitted). Possession may be actual or constructive, and may be joint or exclusive. *People v McKinney*, 258 Mich App 157, 166; 670 NW2d 254 (2003). "The essential issue is whether the defendant exercised dominion or control over the substance." *Id.* A person can possess a controlled substance and not be the owner of the substance. *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992).

In this case, the police seized 88 marijuana plants from Unit 15E. Defendant does not dispute that he was in possession of all these plants. Indeed, the evidence produced at the evidentiary hearing established that defendant did, in fact, posses the marijuana plants. Defendant admitted that he leased Unit 15E for the purpose of growing marijuana plants, and he was at Unit 15E five to seven days a week. The 88 plants were distributed among three grow booths, and although the grow booths were latched, defendant testified that they were not locked. There was no evidence that defendant was denied access to any of the marijuana plants. Under the circumstances, defendant clearly possessed all 88 marijuana plants. He knew of the presence and character of the plants and he exercised dominion and control over them.

But, despite being in possession of more marijuana plants than permitted under the MMMA, defendant claims that he is entitled to immunity under § 4(b) because only 24 of the 88 plants were for his qualifying

patients and nothing in the MMMA prohibited him from letting other registered primary caregivers and registered qualifying patients utilize Unit 15E to grow and cultivate marijuana plants. We disagree.

The MMMA permits the possession and cultivation of 12 marijuana plants by a registered qualifying patient for whose treatment of a debilitating medical condition the marijuana plants are grown and cultivated *or* by the patient's registered primary caregiver.[5] Under § 4(a), a qualifying patient, who has been issued and possesses a registry identification card, is immune from arrest and prosecution for the medical use of marijuana provided, in part, that the qualifying patient does not possess more than 12 marijuana plants and "has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient[.]" MCL 333.26424(a). Similarly, under § 4(b), a primary caregiver, who has been issued and possesses a registry identification card, is immune from arrest and prosecution "for assisting a qualifying patient to whom he or she is connected through the [MDCH's] registration process with the medical use of marihuana" provided, in part, that the primary caregiver does not possess more than 12 marijuana plants "for each registered qualifying patient who has specified that the primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient[.]" MCL 333.26424(b)(2).

Because §§ 4(a) and 4(b) only allow either the registered qualifying patient or the qualifying patient's

---

[5] The MMMA requires that marijuana plants be grown in an "enclosed, locked facility," MCL 333.26424(a) and (b)(2), defined as "a closet, room, or other enclosed area equipped with locks or other security devices that permit access only by a registered primary caregiver or registered qualifying patient," MCL 333.26423(c). The prosecutor does not dispute that Unit 15E was an "enclosed, locked facility."

registered primary caregiver to possess 12 marijuana plants, we conclude that the plain language of §§ 4(a) and 4(b) unambiguously provides that only one person may possess 12 marijuana plants for the registered qualifying patient's medical use of marijuana. That person is either the registered qualifying patient himself or herself, if the qualifying patient has not specified that a primary caregiver be allowed to cultivate his or her marijuana plants, or the qualifying patient's registered primary caregiver, if the qualifying patient has specified that a primary caregiver be allowed to cultivate his or her marijuana plants.

That only one person—either the registered qualifying patient or the qualifying patient's registered primary caregiver—is allowed to possess marijuana plants for the patient's medical use of marijuana is also reflected in § 6 of the MMMA, MCL 333.26426, which governs registry identification cards. In an application for a registry identification card, a qualifying patient must submit the "[n]ame, address, and date of birth of the qualifying patient's primary caregiver, if any[.]" MCL 333.26426(a)(5). If the qualifying patient has designated a primary caregiver, the patient must also designate on the application "whether the qualifying patient *or* primary caregiver will be allowed under state law to possess marihuana plants for the qualifying patient's medical use." MCL 333.26426(a)(6) (emphasis added). See also MCL 333.26426(e)(6), which states that registry identification cards shall contain "[a] clear designation showing whether the primary caregiver *or* the qualifying patient will be allowed under state law to possess the marihuana plants for the qualifying patient's medical use, which shall be determined based solely on the qualifying patient's preference" (emphasis added). "The word 'or' is a disjunctive term. It indicates a choice between two alternatives." *McQueen*, 293 Mich

App at 671 (citations omitted). Accordingly, under the plain language of § 6, the registered qualifying patient or the qualifying patient's registered primary caregiver, but not both, may possess marijuana plants for the patient's medical use of marijuana.

Further, we reject defendant's reliance on the fact that the MMMA is silent regarding whether registered qualifying patients and registered primary caregivers may utilize the same enclosed, locked facility to grow and cultivate marijuana plants. Because the MMMA did not repeal any drug laws, *Redden*, 290 Mich App at 92 (O'CONNELL, P.J., concurring), any possession of marijuana that does not fall within the "narrowly tailored protections" of the MMMA, *King*, 291 Mich App at 509, remains illegal under the PHC. Here, defendant was in possession of the 88 marijuana plants that were seized from Unit 15E. But, the MMMA only authorized him to possess 12 marijuana plants for each registered qualifying patient that he was connected to through the MDCH's registration process, provided that the qualifying patient designated him to be allowed to cultivate the plants. Defendant was not authorized to possess the marijuana plants that were being grown and cultivated for registered qualifying patients that he was not connected to through the MDCH's registration process; those marijuana plants could only be possessed by the registered qualifying patient for whose treatment they were grown or the qualifying patient's registered primary caregiver.

Consequently, defendant's possession of all 88 marijuana plants seized from Unit 15E was not permitted by the MMMA. Defendant, therefore, is not entitled to the presumption of § 4(d) that he was engaged in the medical use of marijuana or to the immunity granted in § 4(b) to primary caregivers who have been issued and

possess a registry identification card. We do not address the trial court's holding that the MMMA requires a registered primary caregiver to keep each of his or her qualifying patients' 12 marijuana plants in a separate enclosed, locked facility. That issue is not before us on the facts of the present case, and we express no opinion on that issue. Nonetheless, because we agree with the trial court that defendant did not comply with the provisions of the MMMA, albeit for a different reason, we affirm the trial court's holding that defendant is not entitled to invoke the immunity of § 4(b). *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998).

### 2. SECTION 8 AFFIRMATIVE DEFENSE

Section 8 of the MMMA provides an affirmative defense of "medical purpose" that a patient and a patient's primary caregiver may assert in any prosecution involving marijuana. MCL 333.26428. MCL 333.26428(a) provides:

> *Except as provided in section 7,* a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:
>
> (1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;
>
> (2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to

ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [Emphasis added.]

In *King*, 291 Mich App at 505-506, the defendant, who was a registered qualifying patient, was growing marijuana plants in a chain-link dog kennel and an unlocked living room closet. He was charged with two counts of manufacturing marihuana. The defendant asserted the § 8 affirmative defense and moved to dismiss the charges. On appeal, this Court held that neither the dog kennel nor the unlocked closet was an enclosed, locked facility. *Id.* at 512-514. The Court further held that because the defendant had not complied with the growing requirements of § 4, the defendant was not entitled to assert the § 8 affirmative defense. *Id.* at 510. It stated:

In *Redden*, this Court held that the statute permits an unregistered patient to assert the affirmative defense under § 8 if he or she meets the requirements of § 8. *Redden*, 290 Mich App at 81, 85. We hold that § 8 permits a "registered qualifying patient" to raise an affirmative defense under § 8, just as an unregistered defendant may under *Redden*. *We further hold that the express reference to § 7 and the statement in § 7(a) that medical use of marijuana must be carried out in accordance with the provisions of the MMMA require defendant to comply with the provisions of § 4 concerning growing marijuana.* And in any case, § 4 applies to defendant because he grew marijuana

under a claim that he is a qualifying patient in possession of a registry identification card. We hold that because defendant did not comply with § 4, he also failed to meet the requirements of § 8 and, therefore, he is not entitled to the affirmative defense in § 8 and is not entitled to dismissal of the charges. [*Id.* at 509-510 (emphasis added).]

Because defendant possessed more than 12 marijuana plants for each qualifying patient that he was connected to through the MDCH's registration process, defendant failed to comply with the requirements of § 4(b). Having failed to comply with the requirements of § 4(b), defendant is not entitled to the § 8 affirmative defense. *King*, 291 Mich App at 510. Because we agree with the trial court that defendant did not comply with the requirements of § 4(b), albeit for a different reason, we affirm the trial court's holding that defendant is not entitled to assert the § 8 affirmative defense. *Lyon*, 227 Mich App at 612-613.

### III. CONCLUSION

We affirm the trial court's order denying defendant's motion to dismiss the charge of manufacturing marijuana. Because defendant possessed marijuana that was being grown for the treatment of debilitating conditions of qualifying patients that were not connected to him through the MDCH's registration process, defendant is not entitled to immunity under § 4(b) of the MMMA. In addition, because defendant failed to comply with the requirements of § 4(b), he is not entitled to assert the § 8 affirmative defense.

Affirmed.

GLEICHER, P.J., and STEPHENS, J., concurred with HOEKSTRA, J.